UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE ACERO, | ) Case No. CV 14-9597-JPR |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) **REVERSING COMMISSIONER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed September 23, 2015, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

## II. BACKGROUND

Plaintiff was born in 1960. (Administrative Record ("AR") 267.) She has a high-school education and worked as a customer-service representative. (AR 22, 126, 147-48, 168-69.)

On December 15, 2009, Plaintiff submitted an application for DIB, alleging that she had been unable to work since October 6, 2009, because of spine/vertebrae problems, depression, concentration problems, and memory loss. (AR 267, 303.) After her application was denied initially, she requested a hearing before an Administrative Law Judge. (AR 180, 228.) A hearing was held on June 8, 2011, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (AR 132-55.) In a written decision issued on June 22, 2011, the ALJ found Plaintiff not disabled. (AR 161-70.) On October 26, 2012, the Appeals Council vacated the ALJ's decision and remanded for further administrative proceedings. (AR 176-78.)

On May 6, 2013, a second administrative hearing was held, at which Plaintiff, who was again represented by counsel, testified, as did a medical and a vocational expert. (AR 103-29.) On May 31, 2013, the ALJ again determined that Plaintiff was not disabled. (AR 13-23.) On June 12, 2013, Plaintiff requested review of the ALJ's decision and submitted additional evidence in support of her claims. (AR 2, 368-73.) On October 31, 2014, the Appeals Council denied review, finding that the new evidence pertained to the period after the ALJ's decision and did not affect the determination that Plaintiff was not disabled on or before May 31, 2013. (AR 2.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied. § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; <u>see</u> <u>Cooper v.</u>
(continued...)

4

her past work; if so, she is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 404.1520(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.  The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 6, 2009, the alleged onset date. (AR 340.) At step two, she concluded that Plaintiff had the severe impairments of "status post cervical fusion; pain disorder; depression (partial remission); and an anxiety disorder not otherwise specified." (AR 15.) At step three, she determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 16.) At step four, she found that Plaintiff had the RFC to perform light work with certain additional limitations. (AR 17.) Based on the vocational expert's testimony, the ALJ concluded that Plaintiff

---

[1] (...continued)
Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

could perform her past relevant work as a customer-service representative. (AR 22-23.) Accordingly, she found Plaintiff not disabled. (AR 23.)

## V. DISCUSSION

Plaintiff claims that (1) the ALJ erred in assessing her RFC, (2) the Appeals Council erred by failing to consider new and material evidence, (3) the ALJ failed to comply with the Appeals Council's remand order, and (4) the ALJ erred in assessing her credibility. (J. Stip. at 3.) Because the ALJ did not adequately consider all the medical evidence in determining Plaintiff's RFC, the matter must be remanded for further analysis and findings. The Court therefore does not reach the other three issues.

### A. The ALJ Erred in Assessing Plaintiff's RFC

Plaintiff contends that the ALJ's RFC assessment was not supported by substantial evidence because she failed to consider a report from workers'-compensation medical evaluator Dr. Satish Kadaba as well as the recent diagnostic studies upon which it was based. (J. Stip. at 3-7.)

#### 1. Applicable law

A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must consider all the medical evidence in the record and "explain in [her] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. § 404.1527(e)(2)(ii); see also

§ 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC must be "based on all of the relevant evidence in the case record"). In making an RFC determination, the ALJ should consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC those findings from treating-physician opinions that were "permissibly discounted").

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. Id.

When a treating or examining doctor's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31). When a treating or examining physician's opinion is contradicted, the ALJ must

7

provide only "specific and legitimate reasons" for discounting it. Id.

### 2. Relevant background

On March 8, 2013, Dr. Kadaba issued a comprehensive medical evaluation and report following an orthopedic examination of Plaintiff and medical-record review as part of Plaintiff's workers'-compensation case. (AR 1185-239.) He reported that Plaintiff sustained cumulative trauma from 1995 to 2007 while working as a sales service representative. (AR 1186.) Plaintiff stated that over time she developed pain and discomfort in her neck, lower back, right shoulder, arms, wrists, hands, and fingers. (AR 1186, 1193-94.) She also complained of headaches, high blood pressure, insomnia, stomach problems, severe depression, stress, and anxiety. (AR 1186, 1194-95.) Plaintiff underwent right-shoulder arthroscopy in March 2008, cervical-spine fusion and left-hip bone-graft surgery at the end of 2008, and cervical-spine surgery in 2010. (AR 1189-90, 1192.) Physical examination of Plaintiff revealed tenderness, tightness, muscle spasm, and restricted range of motion in the cervical spine; tenderness, positive impingement sign, and decreased range of motion in the right shoulder; and mild tenderness and restricted range of motion in flexion and extension in the wrists, with positive Tinel's sign and Phalen's test[2] and mildly

---

[2] Tinel's-sign and Phalen's-sign tests are used to diagnose carpal tunnel syndrome. Carpal Tunnel Syndrome Health Center, WebMD, http://www.webmd.com/pain-management/carpal-tunnel/physical-exam-for-carpal-tunnel-syndrome (last updated Nov. 14, 2014).

1 positive Finkelstein's test.[3] (AR 1197.) Dr. Kadaba also found
2 that Plaintiff had diminished grip strength. (AR 1231.)
3 Plaintiff's neurological examination showed "4/5 weakness" in the
4 right shoulder in abduction and flexion and diminished sensation
5 in the distribution of the median nerve of both hands, as well as
6 nonspecific sensory changes in the lower left extremity. (AR
7 1198-99.) Plaintiff's dorsolumbar examination showed tenderness,
8 muscle tightness, guarding, spasm, and restricted range of motion
9 in extension and rotation. (AR 1198.) Dr. Kadaba also found
10 limitation of function in the lumbar spine. (AR 1231.) He
11 diagnosed Plaintiff with "status post cervical fusion with
12 residuals," "status post right shoulder arthroscopy with
13 residuals," "bilateral wrist chronic strain, rule out internal
14 derangement," "chronic lumbosacral ligamentous and muscular
15 strain with possible discopathy," sleep disorder, stress,
16 anxiety, depression, gastrointestinal distress, constipation,
17 headaches, and hypertension. (AR 1228.) He found that
18 Plaintiff's orthopedic injuries were related to her work
19 situation. (AR 1237-38.) He noted that Plaintiff had received
20 appropriate treatment for right-shoulder and cervical-spine
21 issues but not for her lumbosacral spine or wrists. (Id.)
22 Therefore, he scheduled Plaintiff for a CT scan of the cervical
23 spine, MRI of the lumbosacral spine, MRI of both wrists, and

---

[3] Finkelstein's test is used to diagnose Quervain's tenosynovitis, "a painful condition affecting the tendons on the thumb side of [the] wrist." De Quervain's tenosynovitis, Mayo Clinic, http://mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/basics/definition/con-20027238 (last updated June 13, 2015).

9

EMG/nerve-conduction studies of the upper and lower extremities. (AR 1238.)

On April 16, 2013, just a few weeks before the second ALJ hearing, Dr. Kadaba issued a supplemental report, discussing the results of Plaintiff's diagnostic tests and studies. (AR 1178-82.) The CT scan of Plaintiff's cervical spine showed a fusion at C4-C5 and C5-C6 and some posterior disc osteophyte at C5-C6. (AR 1180.) The MRI of Plaintiff's lumbar spine showed multiple discopathy, with mild to moderate degenerative disc changes at L4-L5 and L5-S1. (AR 1180-81.) The EMG/nerve-conduction study showed mild chronic S1 radiculopathy on the left. (AR 1181.) Dr. Kadaba also noted that Plaintiff's dorsolumbar examination revealed nonspecific sensory loss. (Id.) With regard to Plaintiff's wrists, the EMG/nerve- conduction studies showed carpal tunnel syndrome on both sides and moderate ulnar neuropathy on the left side affecting the sensory components. (AR 1180-81.) Dr. Kadaba recommended conservative treatment for Plaintiff's wrists and lumbosacral spine, including physical therapy and acupuncture. (AR 1181.) As Plaintiff had multiple discopathy and chronic S1 radiculopathy, Dr. Kadaba also stated that a lumbar epidural injection was a possibility if Plaintiff desired such treatment. (Id.) Surgery was not recommended for Plaintiff's carpal tunnel syndrome. (Id.)

In her decision, the ALJ noted that at the hearing Plaintiff testified to having had "three MRI studies and a CT scan" done recently at Dr. Kadaba's request, "as well as a nerve conduction test." (AR 17.) She nowhere discussed those studies, however. She noted that the record contained "numerous reports which were

generated as the result of workers compensation litigation" and found that their "conclusions, observations and findings" "are often of limited value" because they were generated with a different purpose and considered different criteria from those applicable in the Social Security context. (AR 18.)

### 3. Analysis

Although it is not necessarily the case, as Plaintiff argues, that the ALJ altogether ignored Dr. Kadaba's April 2013 supplemental report — nothing indicates that she did not mean to encompass it in her brief discussion of workers'-compensation reports in general — Plaintiff is correct that the ALJ never expressly mentioned it, unlike Dr. Kadaba's March report, which she did discuss (see AR 19). In any event, the ALJ erred in failing to independently consider the results of the Spring 2013 diagnostic studies in fashioning Plaintiff's RFC, particularly given that almost all the other evidence she relied on was from at least two years earlier. (See generally AR 18-19); see Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) (as amended) (noting that ALJ must give reasons for rejecting "significant probative evidence" (citation omitted)); Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (same); Banks v. Colvin, No. 13-cv-05322 BHS, 2014 WL 1912063, at *2-3 (W.D. Wash. May 12, 2014) (finding MRI to be significant and probative and reversing because ALJ failed to consider it). Moreover, the ALJ did not consider Dr. Kadaba's assessment of sensory loss and limitations in Plaintiff's lumbosacral spine, hands, and wrists based on the results of those studies or provide a sufficient reason to reject his opinion. To the extent her general

11

observation about workers'-compensation reports was intended to apply to Dr. Kadaba's April 2013 supplemental report, it was not "specific" enough to meet her obligation to explain her reasoning. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion . . . he errs."); Lester, 81 F.3d at 830–31.

The Commissioner argues that the ALJ's error was harmless because the EMG/nerve-conduction study showed only "mild chronic S1 radiculopathy on the left and carpal tunnel syndrome," requiring only "conservative measures[,] . . . physical therapy/acupuncture." (J. Stip. at 5 (citing AR 1181).) The Commissioner asserts that the mild findings and conservative treatment measures would not have affected the ALJ's RFC assessment. (Id. at 6.)

But the Commissioner's argument fails to address all of Dr. Kadaba's findings regarding Plaintiff's lumbosacral spine. Although the Commissioner emphasizes that the EMG/nerve-conduction study revealed only mild chronic S1 radiculopathy, Dr. Kadaba also diagnosed Plaintiff with multiple discopathy of the lumbar spine, with mild to moderate degenerative disc changes at L4-L5 and L5-S1. (AR 1180-81.) The MRI of Plaintiff's lumbar spine showed "a 3-mm left paracentral foraminal disc protusion with ligamentum buckling, facet arthropathy, and some mild epidural lipomatosis" at L4-L5, "a 3-mm to 4-mm left paracentral disc protrusion with facet arthropathy and ligamentum buckling" at L5-S1, and "a 2-mm left paracentral foraminal disc protrusion with no arthropathy" at L3-L4. (AR 1180.) Dr. Kadaba assessed nonspecific sensory loss. (AR 1181.) Moreover, the

Commissioner's argument fails to take into account Dr. Kadaba's finding that Plaintiff's EMG/nerve-conduction study showed moderate ulnar neuropathy affecting sensory components on the left in addition to mild carpal tunnel syndrome on the left. (AR 1180.)  Finally, although Dr. Kadaba recommended physical therapy and acupuncture, he also recognized that Plaintiff's treatment might include a lumbar epidural steroid injection (AR 1181), which is not necessarily conservative.  See Yang v. Colvin, No. CV 14-2138-PLA, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (finding that spinal epidural injections are not conservative treatment).

    The Commissioner further argues that Plaintiff "did not complain that her carpal tunnel was a reason she could not work." (J. Stip. at 6.)  To the contrary, Plaintiff regularly complained about the functionality of her hands.  In her May 2011 hearing brief, she discussed medical records showing weakness of grip with the right hand and a positive Phalen's test for both wrists. (AR 353, 886.)  At the first hearing, she testified that she had numbness in her hands, trouble writing, and problems dropping things. (AR 142-43, 147.)  Plaintiff's function report and medical records reflect repeated complaints of pain and limitation of function with her hands and wrists. (See, e.g., AR 323, 929, 1072, 1193, 1195, 1228.)  Finally, the ALJ acknowledged that Plaintiff alleged "she could not return to work because of severe pain with . . . use of her hands which was required in her past job." (AR 17.)

    The ALJ's error in failing to discuss Dr. Kadaba's supplemental report or the studies upon which it was based was

not harmless. The ALJ's RFC for a range of light work was based primarily on Plaintiff's severe impairments of status post cervical fusion, pain disorder, depression, and anxiety disorder. (AR 15, 17.) Dr. Kadaba's supplemental report is the only medical record discussing Plaintiff's most recent diagnostic studies, which indicate that she also suffers from multiple discopathy in the lumbosacral spine, chronic S1 radiculopathy, carpal tunnel syndrome, and ulnar neuropathy. By disregarding Dr. Kadaba's opinion and the diagnostic studies, the ALJ failed to consider including in the RFC any limitations based on objective medical evidence concerning Plaintiff's function and sensory loss in the lumbar spine, affected sensory components in the left ulnar nerve, and diminished grip strength. (AR 1180-81, 1231.) As these limitations might well affect the RFC assessment, the ALJ's error cannot be considered harmless. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

    B.    Remand for Further Proceedings Is Appropriate

When, as here, an ALJ errs in denying benefits, the Court generally has discretion to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit-as-true" rule to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Garrison, 759 F.3d at 1019-20.

Under the credit-as-true framework, three circumstances must be present before the Court may remand to the ALJ with instructions to award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. When, however, the ALJ's findings are so "insufficient" that the Court cannot determine whether the rejected testimony should be credited as true, the Court has "some flexibility" in applying the credit-as-true rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also Garrison, 759 F.3d at 1020 (noting that Connett established that credit-as-true rule may not be dispositive in all cases). This flexibility should be exercised "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Garrison, 759 F.3d at 1021.

Here, remand for further proceedings is appropriate because the ALJ's consideration of Dr. Kadaba's report and the studies on which it was based was so insufficient that the Court cannot tell whether the evidence should be credited as true. On remand, the ALJ will have the opportunity to explain more fully the assessment of any limitations concerning Plaintiff's lumbar spine and use of her hands. She can also consider the evidence that

was presented only to the Appeals Council and will have the opportunity to reassess Plaintiff's credibility in light of all the evidence she previously did not consider or did not explain her consideration of.

## VI. CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Opinion. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 14, 2016          _____
                               JEAN ROSENBLUTH
                               U.S. Magistrate Judge

---

[4] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."